**RECEIVED**

**APR 0 3 2019**

**LEGAL DEPT.**

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

Jerald Boitnott,

        Plaintiff,

vs.

DQ Training Restaurants LLC
d/b/a DQ Grill & Chill and Richard
J. Kaufman

        Defendants.

Court File No.:

**SUMMONS**

THIS SUMMONS IS DIRECTED TO DQ Training Restaurants LLC d/b/a DQ Grill &
Chill and Richard J. Kaufman:

    1.    YOU ARE BEING SUED. The Plaintiffs have started a lawsuit against
you. The Plaintiff's Complaint against you is attached to this summons.  Do not throw
these papers away. They are official papers that affect your rights. You must respond to
this lawsuit even though it may not yet be filed with the Court, and there may be no court
file number on this summons.

    2.    YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.
You must give or mail to the person who signed this summons a written response called
an Answer within 20 days of the date on which you received this Summons.  You must
send a copy of your Answer to the person who signed this summons located at:

    Patrick W. Michenfelder, Esq.
    Chad A. Throndset, Esq.
    Throndset Michenfelder Law Office, LLC
    One Central Avenue West, Suite 203
    St. Michael, MN 55376

    3.    YOU MUST RESPOND TO EACH CLAIM. The Answer is your written
response to the Plaintiff's Complaint. In your Answer you must state whether you agree
or disagree with each paragraph of the Complaint.  If you believe the Plaintiff should not
be given everything asked for in the Complaint, you must say so in your Answer.

4.    YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS. If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5.    LEGAL ASSISTANCE. You may wish to get legal help from a lawyer. If you do not have a lawyer the Court Administrator may have information about places where you can get legal assistance. Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.

6.    ALTERNATIVE DISPUTE RESOLUTION. The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to this Complaint even if you expect to use alternative means of resolving this dispute.

THRONDSET MICHENFELDER, LLC

Dated: March 22, 2019

By: _____
   Chad A. Throndset (#0261191)
   Patrick W. Michenfelder (#024207X)
Cornerstone Building
One Central Avenue W., Suite 203
St. Michael, MN 55376
Tel: (763) 515-6110
Fax: (763) 226-2515
Email: chad@throndsetlaw.com
Email: pat@throndsetlaw.com
*Attorneys for Plaintiff*

2

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF HENNEPIN                             FOURTH JUDICIAL DISTRICT

---

Jerald Boitnott,                                          Court File No.:

                    Plaintiff,
vs.                                                       **COMPLAINT**

DQ Training Restaurants LLC
d/b/a DQ Grill & Chill and Richard J.
Kaufman,

                    Defendants.

---

Plaintiff, by and through his undersigned counsel, bring this action against DQ Training Restaurants LLC d/b/a DQ Grill & Chill and Richard J. Kaufman, for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq*. (the "ADA") and its implementing regulations, and allege as follows:

## INTRODUCTION

1.     This case concerns Defendants' federal statutory obligation to ensure their facility becomes, *and remains*, compliant with the ADA. Accordingly, Plaintiff seeks: 1) remediation of the unlawful architectural barriers described below; and 2) modification of Defendants' ADA related policies, procedures, and practices in order to ensure that the facility remains ADA complaint.   Plaintiff also seeks a nominal monetary award, his

1

reasonable attorneys' fees, litigation expenses, and costs, and such other relief as is just and proper, and/or is allowable under Title III of the ADA.

2.      The ADA, enacted in 1990, is the central civil rights law protecting people with disabilities, a group of Americans who are too often overlooked and undervalued. The ADA uses different means than other civil rights laws, but the purpose of the laws is the same: the eradication of discrimination. As one legal scholar explained: A single step in front of a store may not immediately call to mind images of Lester Maddox standing in the door of his restaurant to keep blacks out. But in a crucial respect they are the same, for a step can exclude a person who uses a wheelchair just as surely as a no-blacks-allowed rule can exclude a class of people. Samuel Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 23 (2006).

3.      Though disability rights laws are supposed to prevent the continued isolation and segregation of people with disabilities in the same tradition as other civil rights laws, some appear to regard disability rights requirements – particularly those involving physical access requirements, such as ramps and hand rails – as different, and less important, than other civil rights. *The Case of "Abusive" ADA Litigation, supra,* at 24. Some also appear to assume that ADA cases are abusive or unnecessary drains on courts; but private enforcement is central to accomplishment of the ADA's rightful purposes and, as has been demonstrated repeatedly, compliance does not happen without the credible threat of private enforcement. *Id.* at 9.

2

4. Title III of the ADA prohibits discrimination by places of "public accommodation," as that term is defined by 42 U.S.C. §12181 (7). It requires places of public accommodation to be readily accessible to, an independently usable by, individuals with disabilities. 42 U.S.C. § 12182.

5. Under 28 C.F.R. § 36.201 (b) both the landlord who owns a building that houses a place of public accommodation and the tenant who owns or operates a place of public accommodation subject to the requirements of the ADA.

6. Violation of the ADA's standards of accessible design are actionable violations of the act. See e.g., *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011).

7. Plaintiff seeks a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a) directing Defendants to make readily achievable alterations to their facilities so as to remove architectural barriers to access and make their facilities fully accessible to and independently usable by individuals with disabilities in accordance with the requirements of the ADA.

8. In addition to remediation of the architectural barriers above, injunctive relief as to Defendants' ADA related policies, procedures and practices is required to ensure Defendants' facility remains ADA compliant under 42 U.S.C. § 12188(a) (2) and 28 C.F.R. § 36.211 and 36.501.

9. The violations in this case are clear and correcting them would involve only minimal expense -- yet Defendants have failed to identify and correct the violations even

though the ADA was enacted 28 years ago. This speaks clearly to the inadequacy of Defendants' ADA related policies, procedures and practices and underscores the importance of this portion of Plaintiff's claim.

10.   Without adequate policies, practices and procedures in place, there is no assurance that the accessible features in the facility will remain operable and complaint, and no assurance that Defendants will stay abreast of their ADA related obligations under the law.

11.   Plaintiff also seeks a nominal monetary award in accordance with authority including *Tayler Bayer v. Neiman Marcus Group, Inc.*, (No. 11-17920 (9th Cir. 2014) and their reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205, 28 C.F.R. § 36.505 and such other relief as it deems just and proper, and/or is allowable under Title III of the ADA.

12.   Despite passage of the ADA more than 25 years ago, to this date, Defendants' property is not fully accessible to, and independently usable by, persons with disabilities. Defendants have failed to remove architectural barriers and take the actions clearly required of it by the ADA, even though such actions are readily achievable. Defendants' conduct constitutes an ongoing and continuous violation of the law.

## JURISDICTION AND VENUE

13.   Jurisdiction of this Court arises under Title III of the Americans with Disabilities Act (the ADA), 42 U.S.C. §§ 12181-12189, which provides for concurrent state and federal court jurisdiction. Federal jurisdiction arises under 28 U.S.C. §§ 1331 and

4

1343(a)(3) because this action includes federal law claims brought pursuant to Title III of the ADA. The Court also has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57 and/or Minn. Stat. § 555.01 et. seq. and Minn. R. Civ. Pro. 57.

14.    Venue in this judicial district is proper because Defendants are located in and transact business within this judicial district and have sufficient contacts to be subject to personal jurisdiction in this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

## PARTIES

15.    Plaintiff Mr. Boitnott's medical records confirm the following diagnoses: traumatic brain injury; spinal cord injury; traumatic myelopathy status post cervical decompression and fusion; minimally displaced fracture of the right spinous process of C4 & C5; nondisplaced fracture of the right C7 superior endplate, transverse process and superior articulating process; traumatic posterior ligamentous edema extending from C1 to C-5-C6; C4-C5 anterior longitudinal ligament injury and calcified disc extrusion with spinal cord compression; left segmental femur fracture involving a periprosthetic B2 the level of his total hip arthroplasty; left segmental femur fracture status post stabilization now requiring left knee immobilizer and TTWB; right posterior talus fracture; cognitive impairment, improving; right upper extremity weakness, gait instability; inferior vena cava filter placement; dysphagia, cervical, improving; delirium, resolved; insomnia, improving; orthostatic hypotension, improving; leukocytosis, improving; normocytic anemia

5

secondary to acute blood loss, stable; degenerative joint disease; obstructive sleep apnea; and gastroesophageal reflux disease; and left hip replacement

16.     Mr. Boitnott's gait instability is exacerbated by his left hip replacement, chronic pain syndrome, weakness, and episodic dizziness. As a result, he has been prescribed a four-wheeler walker with convertible seat and a cane, and a wheelchair. Because Mr. Boitnott's condition can vary, so does his use of and reliance upon these mobility devises. Thus he may require a cane on days when he is more stable, and the four-wheeler walker with convertible seat on days when he is less stable, and a wheelchair when his condition worsens so that he cannot balance and is at risk for falling even with a four-wheeler walker. Use of these devises also may vary depending on the length of a particular outing, as his limited stamina can directly impact his stability; and may also vary based upon the distance he has to traverse; or even who is accompanying him – as some, who are more familiar with him and his condition, can be trusted to offer more assistance than others.

17.     Mr. Boitnott's mental and physical impairments substantially limit his ability to walk, balance, stand, reach, lift, bend, work, and have at times even prevented his ability to complete such menial tasks as washing dishes.

18.     Boitnott has an acute understanding of the discrimination people with disabilities regularly encounter when businesses ignore the ADA – and the humiliation, embarrassment, stigma, physical discomfort, stress, strain, fatigue and isolation from friends and family that results. Boitnott is also well aware of the benefits for the disabled

6

when responsible business owners take the ADA's requirements seriously. Boitnott is very much committed to doing all that he can to help himself, and other disabled people, by holding businesses accountable for ignoring the ADA.

19.     Compliance with Title III is critical for Mr. Boitnott and the disabled community. If, for example, a toilet is not accessible with adequate maneuvering space, grab bars, etc. a disabled individual with impairments of the kind Mr. Boitnott suffers from either cannot toilet, or cannot do so without assistance or placing themselves at risk of injury. Without compliance, such individuals could be forced to urinate and defecate on themselves because a place of public accommodation did not have an accessible toilet. Similarly, without a properly striped parking lot including accessible parking and an accompanying access isle, such individuals face the threat that another may park so close to the vehicle he or she is travelling in that he or she will be unable to access that vehicle until the car parked beside it is moved, or without excessive struggle and risk of injury. And without an accessible entrance, disabled individuals are excluded from independent access to the premises entirely.

20.     Adequately maintained parking lots and access routes without broken, patched, or a deteriorated surface, and without excessive slopes or changes in level are particularly significant to Mr. Boitnott because these conditions put him at risk of falling and injuring himself and make it more difficult for him to enter and safely patronize businesses in the way those without mobility related disabilities can.

21.  ADA compliant sales counters, coat hooks, toilet grab bars and toilet paper dispensers are also particularly significant to Mr. Boitnott because ADA compliance allows him patronize a place of public accommodation, toilet and conduct business without excessive reaching or struggle and without needless pain or risk of falling and injuring himself. Failure to comply with the ADA makes it more difficult for him to enter and safely patronize businesses in the way those without mobility related disabilities can.

22.  Boitnott was born in Minnesota, resides in Minnesota, and has done so for more than forty years. He has a number of friends in and regularly frequents businesses in the Twin Cities Metropolitan and surrounding area (the Area) including restaurants, convenience stores, general stores, grocery stores and other business – and has done so for years and years. His ability to independently patronize businesses in the Area and other events is important to Boitnott and his quality of life; it enables him to obtain necessary goods and services and allows him to interact with friends and the community, which is an important social outlet for him.

23.  Defendant DQ Training Restaurants LLC d/b/a DQ Grill & Chill ("DQ") owns and/ or operates DQ and/or is the lessee of the real property upon which it is located at 2800 West 66th Street, Richfield, MN, a place of public accommodation within the meaning of the ADA.

24.  Defendant Richard J. Kaufman owns and/or is the lessor of the real property upon which DQ is located, a place of public accommodation within the meaning of the ADA.

8

## ARCHITECTURAL BARRIERS

25.     In March of 2019, Boitnott visited DQ, became aware of, and was deterred from patronizing the facility by, discriminatory barriers including, but not necessarily limited to, the following:

a.     lack of at least 5% of accessible seating locations at the bar and/or distributed or dispersed throughout the facility in violation of the 2010 ADA Standards 226.1, 902 and the 1991 ADA "Safe Harbor" Standards, 4.32, 5.2;

b.     a mirror placed over a lavatory with a bottom edge of the reflecting surface more than 40 inches above the floor in violation of the 2010 ADA Standards 603.3 and the 1991 ADA "Safe Harbor" Standards, 4.19.6;

c.     operable parts of a towel dispenser, not over a lavatory, which is 53 inches above the floor which is greater than 48 inches above the floor in violation of the 2010 ADA Standards 309;

d.     a coat hook that is 59 inches above the floor which is higher than 48 inches above the floor in violation of 2010 ADA Standards 603.4;

e.     the operable parts of the soap dispenser, which is not above a lavatory or counter is 53 inches above the floor which is higher than 48 inches above the floor in violation of 2010 ADA Standards 308.2.2 and the ADA "Safe Harbor" Standards 4.27.3; and

f.      a toilet paper dispenser that is located 16 inches from the front of the toiled

to the centerline of the dispenser, which is greater than 9 inches from the front of the toilet

to the centerline of the dispenser in violation of ADA Standards 604.7.

26.     The photographs attached hereto as Exhibit A depict violations identified in

the preceding paragraph.

## POLICIES, PROCEDURES, AND PRACTICES

27.     In addition to remediation of the architectural barriers above, injunctive relief

as to Defendants' ADA related policies, procedures and practices is required to ensure

Defendants' facility remains ADA compliant under 42 U.S.C. § 12188(a) (2) and 28 C.F.R.

§ 36.211 and 36.501.

28.     Defendants' ADA related policies, procedures, and practices are inadequate.

29.     The violations in this case are clear and correcting them would involve only

minimal expense -- yet Defendants have failed to identify and correct the violations even

though the ADA was enacted 28 years ago. This speaks clearly to the inadequacy of

Defendants' ADA related policies, procedures and practices and underscores the

importance of this portion of Plaintiff's claim.

30.     Without adequate policies, practices and procedures in place, there is no

assurance that the accessible features in the facility will remain operable and complaint,

and no assurance that Defendants will stay abreast of their ADA related obligations under

the law.

31.   The above listing is not to be considered all-inclusive of the barriers and violations of the ADA which exist at the facility. In order to fully identify all of the discriminatory conditions at the facility, Plaintiff requires an inspection which will be sought in the discovery phase of this litigation.

32.   Compliance with the ADA is required by 42 U.S.C. § 12182(b)(2)(A)(iv) because remedying the barriers identified is readily achievable due to the lack of difficulty and low cost of remedying the barriers. Some of the above-listed violations can be remedied through the same measures prescribed by federal regulation as examples of modifications that are "readily achievable." 28 C.F.R. § 36.304(b).

33.   Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees or with total revenues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and alterations to improve accessibility. Section 190 of the IRS Code provides a tax deduction for businesses of all sizes for costs incurred in removing architectural barriers, up to $15,000. See ADA Update: A Primer for Small Business, http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar.16, 2011).

34.   As a person with a disability, Boitnott has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

11

35.    Boitnott is not able to access the facility independently on a full and equal basis and is excluded from full and equal enjoyment of the goods, services, privileges, advantages, and/or accommodations offered therein because of his disabilities and due to the barriers to access and violations of the ADA that exist at Defendants' facility.

36.    Boitnott lives near to the facility. Boitnott intends to patronize the facility in the future, although the unlawful barriers described herein prevent him from being able to do so independently and deter him from doing so. Boitnott's condition varies and, depending on the status of his condition on a given day, he is sometimes dependent upon having someone take him to or accompany him when he visits places. This limits his ability to make definitive plans to return to a place on a specific date. But he regularly patronizes businesses in the vicinity of the facility and would return to patronize the facility in the imminent future but for the barriers described herein.

37.    The violations discussed above presently deter and discourage Boitnott from returning to the facility for reasons including, but not necessarily limited to, the following: the above-referenced violations make it difficult or impossible for him to patronize the facility unless he twists, struggles and strains himself or obtains help from others; and puts him at risk of injury. All of these things negatively affect Mr. Boitnott's sense of independence and can lead to humiliating accidents, derisive comments, embarrassment, a loss of dignity, and feelings of being stigmatized as different or inferior.

38.    Mr. Boitnott will return and patronize the facility without hesitation when the barriers identified herein have been removed or cured: and he will return within the

12

next several months in any event because it is located in an area he regularly socializes in and because he is interested in checking on the Defendants' ADA compliance and that of other similar businesses as a tester in hopes to thereby increase accessibility for the disabled.

39.     Defendants have intentionally maintained the facility in a condition that violates the ADA for reasons including, but not limited to, the following: the ADA was passed in 1990 and has been well publicized; the above-described barriers are intuitive and obvious; ADA Title III compliance information and assistance is readily available, at no cost (see e.g., ada.gov); Defendants exercised control over the conditions at the facility; and Defendants have and continue to maintain the facility in a condition that does not comply with the easily understandable accessibility design standards that apply here and which can be achieved at modest expense.

40.     Boitnott is without adequate remedy at law, has suffered and is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm upon his planned return visit to the facility unless and until Defendants are required to remove the architectural barriers to equal and independent access and ADA violations that exist at Defendants' place of public accommodation, including those set forth specifically herein.

41.     Absent injunctive relief, Defendants' unlawful conduct herein described will continue to cause injury to Plaintiff and other disabled individuals, who will continue to be unable to independently access the facility and/or to enjoy the goods, services, privileges,

advantages and/or accommodations offered therein on a full and equal basis, in violation of the rights ensured to the disabled by the ADA.

## FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICAN'S WITH DISABILITIES ACT, 42 U.S.C. §§ 12101

42.    Plaintiff incorporates and re-alleges the paragraphs above.

### Denial of Full and Equal Enjoyment and Use

43.    Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

44.    A public accommodation under the ADA includes, inter alia, "sales establishments" and "a restaurant, bar, or other establishment serving food or drink." 42 U.S.C. § 12182 (7).

45.    Defendants have discriminated against Plaintiff and others by their failure to make their place of public accommodation fully accessible to persons with disabilities on a full, equal, and independent basis in violation of 42 U.S.C. § 12182(a) and the regulations promulgated thereunder as described above.

46.    Boitnott has been denied full and equal access to the facility and has been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations on a full and equal basis.

14

**Failure to Remove Architectural Barriers in an Existing Facility**

47.    The ADA specifically prohibits the failure to remove architectural barriers in existing facilities where such removal is readily achievable under 42 U.S.C. § 12182 (b)(2)(A)(iv) and 28 C.F.R. § 36.104.

48.    Even when an entity can demonstrate that removal of a barrier is not readily achievable, it must nevertheless provide for the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations goods available through alternative means, if alternative means are readily achievable. 42 U.S.C. § 12182 (b)(2)(A)(v).

49.    Plaintiff alleges that removal of the barriers at the facility is readily achievable.

50.    In the alternative, to the extent the removal of any or all of the barriers at issue is not determined to be readily achievable, Plaintiff alleges that Defendants violated the ADA by failing to make the required goods, services, etc. equally available to the disabled through alternative means.

51.    To the extent that the facility was designed and constructed for first occupancy after January 26, 1993, Plaintiff alleges that removal of the barriers at the facility is not structurally impracticable under 42 U.S.C. § 12182 (b)(2)(A)(v).

52.    To the extent that the facility was altered after January 26, 1992 (including, but not limited to, any remodeling, renovation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangements in the

15

configuration of walls and full-height partitions) Plaintiff alleges that that the facility is not accessible to the disabled to the maximum extent feasible under 42 U.S.C. § 12183 (a)(2).

### Inadequate Policies, Procedures, and Practices

53.   ADA Title III entities have an ongoing duty to review their places of public accommodation for compliance and to remediate non-compliance as required.

54.   Defendants' ADA related policies, procedures, and practices are inadequate.

55.   Defendants' policies, procedures, and practices (including, but not limited to, those ensuring the identification and remediation of prohibited barriers, maintenance of accessible features, training and future compliance) are inadequate to ensure ongoing compliance with the ADA and therefore must be modified accordingly.

56.   The violations in this case are clear and correcting them would involve only minimal expense -- yet Defendants have failed to identify and correct the violations even though the ADA was enacted 28 years ago. This speaks clearly to the inadequacy of Defendants' ADA related policies, procedures and practices and underscores the importance of this portion of Plaintiff's claim.

57.   Without adequate policies, practices and procedures in place, there is no assurance that the accessible features in the facility will remain operable and complaint, and no assurance that Defendants will stay abreast of their ADA related obligations under the law.

58.     Defendants have and continue to discriminate against Plaintiff and others by their failure to adopt and implement adequate ADA related policies, procedures and practices.

59.     Injunctive relief as to Defendants' ADA related policies, procedures and practices is required to ensure Defendants' facility remains ADA compliant under 42 U.S.C. § 12188(a) (2) and such other applicable legal authority.

### Nominal Monetary Award

60.     Plaintiff alleges a right to a nominal monetary award as equitable injunctive relief in accordance with authority including *Tayler Bayer v, Neiman Marcus Group, Inc.*, No. 11-17920 (9th Cir. 2014) and such other authority as may be applicable.

### Attorneys' Fees and Costs

61.     Plaintiff has retained the undersigned counsel for the filing and prosecution of this action, and are entitled to recover reasonable attorneys' fees, litigation expenses and costs from Defendants, pursuant to 42 U.S.C. §§ 12205, 12117 and 28 C.F.R. § 36.505, in connection with the prosecution of this matter.

### SECOND CAUSE OF ACTION: DECLARATORY JUDGMENT

62.     Plaintiff incorporates and re-alleges the paragraphs above.

63.     This cause of action is brought pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57 and/or Minn. Stat. § 555.01 et. seq. and Minn. R. Civ. Pro. 57.

64.     Plaintiff seeks and is entitled to a judgment declaring that the Facility, as of the date this matter was commenced, was being operated unlawfully and in violation of the

ADA and its implementing regulations for reasons including, but not necessarily limited to the unlawful denial of full and equal enjoyment of use, unlawful violations of the ADA accessible design standards, unlawful failure to remove architectural barriers, and unlawful policies, practices and/or procedures identified above.

**WHEREFORE**, Plaintiffs respectfully request:

a.      That the Court issue a Declaratory Judgment determining that Defendants' facility, at the commencement of this instant suit, was being operated in violation of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and the relevant implementing regulations.

b.      That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2), 28 C.F.R. § 36.504(a) enjoining Defendants from continuing its discriminatory practices; including an order directing Defendants to make readily achievable alterations to their facility so as to remove architectural barriers to access and make its facility fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA and enjoining operation of the Facility until such time as the alterations are completed;

c.      That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2), 28 C.F.R. § 36.504(a) enjoining Defendants to make reasonable modifications in policies, practices and/or procedures necessary to ensure current and ongoing compliance with the ADA and enjoining operation of the Facility until such time as the modifications are made and implemented;

d.     That the Court award Plaintiff injunctive relief in the form of a nominal

monetary sum;

e.     That the Court award Plaintiff his reasonable attorneys' fees, litigation

expenses, and costs of suit pursuant to 42 U.S.C. § 12205, 28 C.F.R. § 36.505, or as

otherwise provided by law; and

f.     That the Court issue such other relief as it deems just and proper, and/or is

allowable under Title III of the ADA.

Dated: March 22, 2019                    **THRONDSET MICHENFELDER, LLC**


By: _____
     Chad A. Throndset (#0261191)
     Patrick W. Michenfelder (#024207X)
     Cornerstone Building
     One Central Avenue West, Suite 203
     St. Michael, MN 55376
     Tel: (763) 515-6110
     Fax: (763) 226-2515
     Email: chad@throndsetlaw.com
     Email: pat@throndsetlaw.com
     *Attorneys for Plaintiff*


The undersigned hereby acknowledges that costs, disbursement, and reasonable attorney
fees may be awarded to the opposing party or parties pursuant to Minn. Stat. § 549.221


_____
Chad A. Throndset


19

# EXHIBIT A






